UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERRI L. COLLINS,                    )    No. EDCV 07-1661-RC
                                     )
          Plaintiff,                 )
                                     )    OPINION AND ORDER
     v.                              )
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
          Defendant.                 )
_____)

     Plaintiff Terri L. Collins filed a complaint on December 28,
2007, seeking review of the decision denying her application for
disability benefits.  On July 16, 2008, the Commissioner answered the
complaint, and the parties filed a joint stipulation on September 16,
2008.


                            **BACKGROUND**

                                **I**

     On April 17, 2003 (protective filing date), plaintiff filed a
claim for disability benefits under the Supplemental Security Income
program of Title XVI of the Social Security Act ("the Act"), 42 U.S.C.

§ 1382(a), claiming an inability to work since April 11, 2003, due to fibromyalgia.  Certified Administrative Record ("A.R.") 99-101, 103, 109.  The plaintiff's application was initially denied on November 6, 2003, and was denied again on March 4, 2004, following reconsideration.  A.R. 51-62.  The plaintiff then requested an administrative hearing, which was held on April 4, 2005, before Administrative Law Judge Joseph Schloss ("ALJ Schloss").  A.R. 19-48, 65.  On April 29, 2005, ALJ Schloss issued a decision finding plaintiff is not disabled.  A.R. 11-17.  The plaintiff appealed that decision to the Appeals Council, which denied review on July 28, 2005.  A.R. 4-10.

On August 22, 2005, plaintiff filed her first complaint seeking review of the Commissioner's decision denying her application for disability benefits, Collins v. Astrue, EDCV 05-0751-RC ("Collins I"),[1] and on December 7, 2006, this Court granted plaintiff's request for relief and remanded the matter to the Social Security Administration under 42 U.S.C. § 405(g), sentence four.  A.R. 349-66.  The Appeals Council, in turn, remanded the matter for further administrative proceedings,[2] A.R. 367-70, and on June 19, 2007, Administrative Law Judge Jay E. Levine ("the ALJ") held a new administrative hearing.  A.R. 954-76.  On October 11, 2007, the ALJ

_____

[1]   Pursuant to Fed. R. Evid. 201, this Court takes judicial notice of relevant documents in Collins I.

[2]   Plaintiff's application was consolidated with a new application she filed on May 31, 2005, which had been denied initially on November 16, 2005, and was denied again on May 2, 2006, following reconsideration.  A.R. 327, 375-79, 382-389, 395-97.

1  issued a decision finding plaintiff is not disabled, A.R. 325-35, and

2  that decision is now before this Court for review.

3

4                                    II

5      The plaintiff, who was born on May 9, 1967, is currently 42 years

6  old.  A.R. 22, 99, 395.  She has attended two or three years of

7  college, and has previously worked as a bus driver, secretary and hair

8  braider.  A.R. 23-26, 110, 115, 118-24, 401-08.

9

10     This Court, in its Collins I decision, summarized the relevant

11 medical evidence as follows:

12

13     On September 25, 2002, R. Prakash, M.D., a cardiologist,

14     examined plaintiff and diagnosed her with hypertension,

15     tiredness, sleep problems, and anemia, and prescribed

16     medication and recommended a low fat diet and exercise.  Dr.

17     Prakash also obtained a doppler echocardiogram, which was

18     consistent with possible mitral valve prolapse, but

19     unremarkable for ischemic heart disease.  [¶]  On April 9,

20     2003, Rana A. Bahl, M.D., examined plaintiff and diagnosed

21     her as having coronary artery disease, angina, hypertension,

22     early congestive heart failure, and arrhythmia.  A stress

23     test revealed equivocal changes for ischemia with no

24     evidence of angina or arrhythmia, and an ECG was abnormal.

25     An echocardiogram performed April 18, 2003, revealed a left

26     ventricular ejection fraction of 68% and trace pulmonic

27     regurgitation.  On December 23, 2003, and January 16, 2004,

28     plaintiff had additional ECGs, both of which were abnormal.

1    [¶]   On April 11, 2003, plaintiff was admitted to Doctor's

2    Hospital Medical Center of Montclair with complaints of

3    recurrent atypical chest pain.   Chest x-rays taken April 11,

4    2003, showed no active cardiopulmonary disease, and an ECG

5    obtained April 13, 2003, also was normal.   Plaintiff was

6    discharged from the hospital on April 15, 2003, with

7    diagnoses of atypical chest pain, hypertension, which was

8    controlled with medication, and stable degenerative joint

9    disease.   [¶]   On April 16, 2003, Dee Beng Lim, M.D.,

10   examined plaintiff and diagnosed her with fibromyalgia,

11   noting plaintiff has multiple tender points.   Dr. Lim

12   treated plaintiff for fibromyalgia and also diagnosed her

13   with chronic fatigue syndrome, depression, insomnia, tension

14   headaches, trapezius and lumbosacral myofascitis,

15   costochondritis, hypertension, obesity, and angina, among

16   other conditions.   On May 6, 2003, Dr. Lim opined plaintiff

17   had been permanently disabled since 2002 due to fibromyalgia

18   and chronic fatigue syndrome.   On June 19, 2003, Dr. Lim

19   prescribed multiple trigger point injections to plaintiff.

20   On July 24, 2003, Dr. Lim opined plaintiff had fibromyalgia

21   since 1994.   Dr. Lim found plaintiff has constant tenderness

22   in her ankles and fingers, paravertebral muscle spasms,

23   paresthesia of her fingers and toes, is limited in her

24   ability to reach, handle, and finger, has trouble walking,

25   and needs an assistive device to walk longer than 10

26   minutes.   [¶]   On August 17, 2003, plaintiff was admitted to

27   Pomona Valley Hospital Medical Center, where Dr. Lim

28   examined plaintiff and diagnosed her with atypical chest

1   pain, fibromyalgia, hypertension, and possible myocardial

2   ischemia (not shown on the electrocardiogram).  ECGs

3   performed August 17 and August 18, 2003, were abnormal;

4   however, a chest CT scan and chest x-ray done on August 17,

5   2003, were normal.  On August 18, 2003, Dr. Bahl examined

6   plaintiff and diagnosed her with coronary artery disease and

7   unstable angina with hypertension.  On the same date, Dr.

8   Bahl performed a cardiac catheterization and angiogram

9   procedure on plaintiff, which was normal, and plaintiff was

10  discharged from the hospital.  [¶] . . . [¶]  On April 24,

11  2004, Dr. Lim opined plaintiff has fibromyalgia that meets

12  the American Rheumatological criteria for the disease,[3]

13  hypertension, gastroesophageal reflux disease, and anxiety,

14  and her symptoms include chronic pain from head to toe,

15  multiple tender points, nonrestorative sleep, morning

16  stiffness, muscle weakness, subjective swelling, irritable

17  bowel syndrome, frequent severe headaches, temporomandibular

18  joint dysfunction, numbness and tingling, dysmenorrhea,

19  anxiety, panic attacks, depression, mitral valve prolapse,

20  and chronic fatigue syndrome.  Dr. Lim found plaintiff's

21  pain is precipitated by changing weather, fatigue,

22  movement/overuse, stress, cold, hormonal changes and being

23  in a static position; her pain is frequently sufficiently

24  severe to interfere with her attention and concentration;

25  _____

26  [3]  "[F]ibromyalgia is diagnosed based on widespread pain
    with tenderness in at least eleven of eighteen sites known as
27  trigger points."  Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1
    (8th Cir. 2003); Rollins v. Massanari, 261 F.3d 853, 855 (9th
28  Cir. 2001).

1    and she has a severe limitation in her ability to deal with

2    work-related stress.  Dr. Lim opined plaintiff can

3    occasionally lift up to 10 pounds and bend and twist at the

4    waist; can sit for 20 minutes at a time and for less than 2

5    hours in an 8-hour workday; can stand for 30 minutes at a

6    time, walk for less than one block without resting or

7    experiencing severe pain, can stand and/or walk for less

8    than 2 hours in an 8-hour day, and must use a cane or other

9    assistive device; and can use her arms to perform such

10   activities as reaching, grasping, and fine manipulations for

11   only 5% of the workday.  Dr. Lim also opined plaintiff needs

12   to shift positions at will and must walk for 5 minutes every

13   20 minutes.  Furthermore, Dr. Lim opined plaintiff must lie

14   down at unpredictable intervals during the work day and must

15   elevate her legs at least 90 degrees with prolonged sitting

16   3-4 times a day.  Finally, Dr. Lim opined plaintiff's

17   condition is likely to produce good and bad days, and she is

18   likely to miss more than 3 days of work a month due to her

19   condition.  [¶]  On June 17, 2005, Dr. Lim noted he has

20   treated plaintiff's fibromyalgia with "various trigger

21   points at sub-occipital, cervical paraspinals, trapezius,

22   levator scapulae, ilio-lumbars and sacro-iliacs, lateral

23   epicondyles, sternal borders, iliac crests, [and] both

24   knees[,]" and plaintiff also has hypertension, chronic

25   fatigue syndrome, irritable bowel syndrome, and severe

26   anxiety and depression.  Dr. Lim further noted plaintiff has

27   been treated with multiple trigger point injections and a

28   course of physical therapy.  Further, Dr. Lim noted that

1    plaintiff's pain level is always "10/10" and she requires
2    morphine for a few hours of pain relief, and plaintiff also
3    takes numerous other medications, including Zelnorm, Avinza,
4    Aciphex, Baclofen, Motrin, Zestril, Verapamil, Ativan,
5    Klonopin, Cymbalta, and Vicodin ES.  Dr. Lim opined
6    plaintiff "is unable to do any kind of work because of her
7    pain and fatigue.  She can not lift more than 10 [pounds],
8    [she is] unable to sit for more than 15 minutes, [she] can
9    not concentrate because of severe anxiety-depression [and
10   s]he could definitely not perform her old profession of
11   being a secretary or a hairdresser."  Finally, Dr. Lim
12   stated he is trying to refer plaintiff to a rheumatologist
13   and pain management specialist.  [¶]  Medical expert Joseph
14   C. King, M.D., an internist, testified at the administrative
15   hearing that plaintiff has hypertension, which is
16   controlled, costochondritis, a history of fibromyalgia, and
17   a history of mild anemia, and that none of her conditions
18   meets or equals any listed impairment.  Dr. King opined
19   plaintiff has "too much medication in her system at one time
20   and . . . apparently is dependent on this medicine now.
21   . . ."  With regard to plaintiff's fibromyalgia, Dr. King
22   opined plaintiff has "only 10 trigger points that I could
23   find [though a]t one time she had 14 trigger points."  Dr.
24   King also opined fibromyalgia usually involves certain
25   tender points and "doesn't involve the whole body from the
26   feet to the head[,]" and plaintiff has "too [many] symptoms
27   to go with the diagnosis of fibromyalgia."
28   //

1  Collins I at 3:4-11:13 (footnotes and citations omitted; footnote
2  added).

3

4      Between July 8, 2005, and January 13, 2006, plaintiff received
5  treatment at the Hi-Desert Family Health Clinic, where she was
6  diagnosed with degenerative disc disease, lupus, fibromyalgia and
7  hypertension, among other problems.[4]  A.R. 683-725.  Thoracic spine x-
8  rays taken January 6, 2006, showed modest degenerative changes with
9  spurring at the lower levels anteriorly, and lumbosacral spine x-rays
10 taken the same day showed modest levoscoliosis, narrowing of the L3-L4
11 disc space, and moderate tiny anterior spurs suggestive of
12 degenerative changes.  A.R. 685-86.

13

14     The plaintiff was hospitalized at St. Bernardine Medical Center
15 between September 21 and 23, 2006, and diagnosed with chest pain,
16 hypertension, mitral valve prolapse, irritable bowel syndrome, and
17 fibromyalgia.  A.R. 775-864.  During this hospitalization, plaintiff
18 was examined by several physicians, including Shuang Bai, M.D.  A.R.
19 791-92, 912-13.  Diagnostic testing included a normal chest x-ray,
20 abnormal ECGs, and an exercise stress test, which revealed no
21 exercise-induced chest pain or arrhythmias and normal hemodynamic
22 response to exercise.  A.R. 831-32, 834, 850, 855-56.  Additionally, a
23 lumbar spine CT scan demonstrated circumferential disc bulging and
24 facet arthropathy with mild spinal stenosis at L3-L4, circumferential

25 _____

26     [4]  Plaintiff's post-remand medical records address both
   plaintiff's physical and mental complaints.  See, e.g., A.R. 453-
27 54, 532-68, 571-600, 620-40, 759-73.  However, since plaintiff
   challenges only the ALJ's assessment of her physical condition,
28 the Court does not discuss plaintiff's mental complaints.

1   disc bulging and bilateral facet arthropathy with moderate spinal
2   stenosis at L4-L5, and mild circumferential disc bulging at L5-S1.
3   A.R. 829-30, 907-08.
4
5        Dr. Bai continued to treat plaintiff through June 6, 2007,
6   diagnosing her with fibromyalgia, obesity and hypertension, among
7   other conditions.  A.R. 883-95.  On March 16, 2007, Dr. Bai opined
8   plaintiff has been unable to work since April 15, 2003.  A.R. 923-26.
9   Dr. Bai further opined:  plaintiff can sit for 0-2 hours at a time and
10  0-2 hours in an 8-hour day because her legs lock up, she stiffens up,
11  and its painful for her to move; plaintiff can walk for 0-2 hours at a
12  time and 0-2 hours in an 8-hour day, and she uses a cane to get
13  around; plaintiff is restricted in using her hands/fingers and feet
14  for repetitive movements due to her fibromyalgia; cold, damp and heat
15  make plaintiff's body hurt; plaintiff can occasionally lift and/or
16  carry up to 10 pounds, balance, stoop, kneel, crouch, crawl, and
17  reach; and plaintiff can never climb.  A.R. 924-25.  Finally, Dr. Bai
18  found plaintiff is depressed and is taking depression medication,
19  which affects her daily activities.  A.R. 926.
20
21       Between March 30 and April 2, 2007, plaintiff was hospitalized at
22  Community Hospital of San Bernardino, where she was diagnosed with
23  chest pain, new onset Type II diabetes mellitus, chronic back pain,
24  fibromyalgia and a history of ventral hernia repair.  A.R. 865-81,
25  897-900.
26
27       On April 23, 2007, Young A. Suk, M.D., examined plaintiff,
28  diagnosed her with degenerative lumbar spinal disease and disc bulging

at L3 through S1, hypertension, type II diabetes mellitus, obesity,
fibromyalgia, and mitral valve prolapse, and recommended lumbar
epidural steroid injections.  A.R. 752-57, 902-05.  On May 16, 2007,
plaintiff had a lumbar epidural steroid injection.  A.R. 735-51.

On June 6, 2007, Nicholas N. Lin, M.D., an internist, examined
plaintiff, diagnosed her with fibromyalgia, diabetes mellitus,
irritable bowel syndrome, hypertension, mitral valve prolapse (by
history), and a history of depression, and concluded plaintiff can:
lift or carry 20 pounds occasionally and 10 pounds frequently; stand
or walk for 6 hours in an 8-hour workday with appropriate breaks; sit
for 6 hours in an 8-hour workday; perform fine and gross manipulation;
occasionally bend, stoop, crouch, kneel, climb stairs, push/pull,
operate a motor vehicle, and be exposed to moving mechanical parts,
extreme cold and extreme heat; frequently reach, handle, finger, feel,
operate foot controls, be exposed to humidity, dusts, odors, fumes,
pulmonary irritants, and vibrations; be around moderate noise; and
never work at unprotected heights.  A.R. 927-41.  Dr. Lin noted
plaintiff uses a cane for prolonged ambulation, which is medically
necessary, and plaintiff can walk only half a block without a cane.
A.R. 934.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
review the Commissioner's decision denying plaintiff disability
benefits to determine if his findings are supported by substantial
evidence and whether the Commissioner used the proper legal standards

in reaching his decision.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th
Cir. 2009); Bray v. Astrue, 554 F.3d 1219, 1222 (9th Cir. 2009).

     "In determining whether the Commissioner's findings are supported
by substantial evidence, [this Court] must review the administrative
record as a whole, weighing both the evidence that supports and the
evidence that detracts from the Commissioner's conclusion."  Reddick
v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari,
246 F.3d 1195, 1201 (9th Cir. 2001).  "Where the evidence can
reasonably support either affirming or reversing the decision, [this
Court] may not substitute [its] judgment for that of the
Commissioner."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007),
cert. denied, 128 S. Ct. 1068 (2008); Bray, 554 F.3d at 1222.

     The claimant is "disabled" for the purpose of receiving benefits
under the Act if she is unable to engage in any substantial gainful
activity due to an impairment which has lasted, or is expected to
last, for a continuous period of at least twelve months.  42 U.S.C.
§ 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
burden of establishing a prima facie case of disability."  Roberts v.
Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

     This Court set forth the Commissioner's five-step sequential
evaluation process in Collins I, and there is no need to again explain
that process.  Applying the five-step sequential evaluation process,
the ALJ found plaintiff has not engaged in substantial gainful
activity since her application date of April 17, 2003.  (Step One).

The ALJ then found plaintiff has the severe combinations of:  "mild degenerative disc and joint disease of the lumbar spine, controlled hypertension, noninsulin[-]dependent diabetes mellitus [Type] II, mild mitral valve prolapse, mild (level I) obesity, history of fibromyalgia, history of irritable bowel syndrome, costochondritis, and depressive disorder, not otherwise specified" (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff cannot perform her past relevant work.  (Step Four). Finally, the ALJ determined plaintiff can perform a significant number of jobs in the national economy; therefore, she is not disabled. (Step Five).

IV

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001); <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here, the ALJ found plaintiff has the RFC to perform at least sedentary work,[5] "except for very mild mental limitations[,]" and further found plaintiff:

---

[5]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

1    [m]entally, . . . has never lost the ability to understand,

2    remember and carry out simple instructions constantly, and

3    complex instructions occasionally to frequently, with

4    customary breaks[;] respond to changes in the workplace

5    setting[;] maintain persistence and pace in a normal work

6    place setting[;] [and] interact appropriately with

7    supervisors, coworkers, and the public occasionally to

8    frequently[.]

9

10   A.R. 331.  However, plaintiff contends the ALJ's RFC determination is

11   not supported by substantial evidence because the ALJ did not properly

12   consider the opinions of her treating physician, Dr. Bai,[6] did not

13   properly address the side effects of her many medications, and failed

14   to properly develop the record or consider plaintiff's obesity.

15

16   **A.   Treating Physician's Opinion:**

17       The medical opinions of treating physicians are entitled to

18   special weight because the treating physician "is employed to cure and

19   has a greater opportunity to know and observe the patient as an

20   individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

21   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

22   1999).  Therefore, the ALJ must provide clear and convincing reasons

23   for rejecting the uncontroverted opinion of a treating physician, Ryan

24   ————————————————

25       [6]  Since plaintiff's claim is that "[t]he ALJ has clearly,
     plainly and unequivocally NOT properly evaluated the opinions of
26   Dr. Bai[,]" Jt. Stip. at 10:12-13, the Court does not address Dr.
     Lim's opinions, which plaintiff also briefly discusses in the
27   Joint Stipulation.  See Jt. Stip. at 9:20-10:11; Vernoff v.
     Astrue, 568 F.3d 1102, 1112 (9th Cir. 2009); Greger v. Barnhart,
28   464 F.3d 968, 973 (9th Cir. 2006).

1   v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008), and

2   "[e]ven if [a] treating doctor's opinion is contradicted by another

3   doctor, the ALJ may not reject this opinion without providing

4   'specific and legitimate reasons' supported by substantial evidence in

5   the record." Reddick, 157 F.3d at 725; Tommasetti v. Astrue,

6   533 F.3d 1035, 1041 (9th Cir. 2008).

7

8       On March 16, 2007, Dr. Bai opined plaintiff had been unable to

9   work since April 15, 2003, and is "permanently disabled" because:  she

10  can sit for only 0-2 hours at a time and 0-2 hours in an 8-hour day;

11  she can walk for only 0-2 hours at a time and 0-2 hours in an 8-hour

12  day, and she uses a cane to get around; she is restricted in using her

13  hands/fingers and feet for repetitive movements due to her

14  fibromyalgia; cold, damp and heat make her body hurt; she can

15  occasionally lift and/or carry up to 10 pounds, balance, stoop, kneel,

16  crouch, crawl, and reach; and she can never climb.  However, the ALJ

17  rejected Dr. Bai's opinions for several reasons,[7] including that Dr.

18  Bai "accepted the [plaintiff's] assertion of fibromyalgia without any

19  supporting clinical findings and went on to prescribe extraordinary

20  amounts of narcotic medication without obtaining a rheumatology

21  consultation. . . ." A.R. 333; see also A.R. 330 ("The clinical notes

22  of the current primary care physician, Shuang Bai, M.D., . . .

23  indicate the [plaintiff] initially reported a history of chronic

24  fibromyalgia, chronic low back pain, and high blood pressure, but

25  other than the noted studies of the spine and the pain evaluation,

26  which produced nothing to support the diagnosis of fibromyalgia and

27  _____

28       [7]  The ALJ erroneously referred to Dr. Bai as Dr. Bria.
    A.R. 333.

very little to support the complaints of back pain and sciatica, there
is no indication that the treating sources contemplate any further
evaluation or treatment other than to continue to prescribe rather
high doses of morphine and Norco."). This finding is supported by
substantial evidence in the record. Indeed, beyond a single vague and
inadequate reference to **unspecified** "tender points," A.R. 392, Dr.
Bai's rather sparse medical records make no mention of any of the
diagnostic criteria of fibromyalgia, which this Court discussed in
detail in Collins I. Since an ALJ may properly reject a treating
physician's opinion that is clearly inconsistent with the medical
records, Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005), as
well as "a treating physician's opinion if it is based 'to a large
extent' on a claimant's self-reports that have been properly
discounted as incredible[,]"[8] Tommasetti, 533 F.3d at 1041 (citations
omitted); Bray, 554 F.3d at 1228, this is a specific and legitimate
reason for rejecting Dr. Bai's opinions.

    The ALJ also rejected Dr. Bai's opinions because they were
inconsistent with the opinions of examining physician Dr. Lin, "who
had the benefit of reviewing the medical evidence of record [and]
found the [plaintiff] able to perform an essentially full range of
light work." A.R. 333. This reason also is a specific and legitimate
reason supported by substantial evidence in the record for rejecting
Dr. Bai's opinion to the extent it contradicted the ALJ's RFC
determination. Batson v. Comm'r of the Soc. Sec. Admin.,

---

[8]   Here, the ALJ also found plaintiff was not completely
credible, A.R. 332, and plaintiff does not challenge this
determination.

1  359 F.3d 1190, 1195 (9th Cir. 2004); <u>Connett v. Barnhart</u>,

2  340 F.3d 871, 875 (9th Cir. 2003).

3

4    **B.   Side Effects of Medication:**

5       In determining a claimant's limitations, the ALJ must consider

6  all factors that might have a significant impact on an individual's

7  ability to work, including the side effects of medications.  <u>Erickson</u>

8  <u>v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir. 1993); <u>Varney v. Sec'y of</u>

9  <u>Health & Human Servs.</u>, 846 F.2d 581, 585 (9th Cir. 1988).  Thus, when

10 a claimant testifies she is experiencing a side effect known to be

11 associated with a particular medication, the ALJ may disregard the

12 testimony only if he "support[s] that decision with specific findings

13 similar to those required for excess pain testimony, as long as the

14 side effects are in fact associated with the claimant's

15 medication(s)."  <u>Varney</u>, 846 F.2d at 585.

16

17      The plaintiff contends the ALJ ignored her treating physicians'

18 opinions regarding the side effects of the many medications she takes,

19 Jt. Stip. at 5:23-24, contending the ALJ failed to consider statements

20 by Drs. Lim and Bai.  First, plaintiff claims the ALJ did not consider

21 Dr. Lim's response to a question asking him to "[i]dentify the side

22 effects of any medication which may have implications for working."

23 Jt. Stip. at 3:24-4:25; <u>see</u> A.R. 312.  However, Dr. Lim merely

24 responded to that question by stating:  "Morphine, codin [sic]

25 Lorazepam, [and] Robaxin."  A.R. 312.  Since Dr. Lim's response merely

26 listed medications, that response does not state plaintiff suffers

27 side effects from any medications, and the ALJ did not need to

28 consider it.  Similarly, plaintiff claims the ALJ did not consider Dr.

1  Bai's statement that plaintiff is "aware of the side effect[s] of

2  [morphine sulfate][,]" <u>see</u> A.R. 887, as he must.  Jt. Stip. at 5:7-12.

3  But once again, Dr. Bai's statement does not show plaintiff is

4  experiencing side effects from a particular medication, but only shows

5  she has an **awareness** of the possible side effects a medication might

6  cause.  Therefore, neither physician's statement provides a basis for

7  reversing the ALJ's decision.

8

9      On a form dated January 16, 2006, plaintiff indicated she takes

10 Lorazepam,[9] which makes her tired, and Seroquel,[10] which makes her

11 groggy the next day.  A.R. 433.  At the administrative hearing in

12 2007, plaintiff also testified that medication she takes causes her

13 memory problems and tiredness.[11]  A.R. 966.  The ALJ considered

14 plaintiff's complaints about these side effects to medication, and

15 rejected them, holding:

16

17      [T]he consultative psychiatric examiners found no indication

18      of any serious cognitive impairments, the most recent

19      psychiatric consultant clearly noting that the reported and

20  ─────────────────

21      [9]  Lorazepam, also called Ativan, "is used in the treatment
    of anxiety disorders and for short-term . . . relief of the
22  symptoms of anxiety."  <u>The PDR Family Guide to Prescription
    Drugs</u>, 60, 375 (8th ed. 2000).
23

24      [10]  "Seroquel combats the symptoms of schizophrenia, a
    mental disorder marked by delusions, hallucinations, disrupted
25  thinking, and loss of contact with reality."  <u>Id.</u> at 610.

26      [11]  Although plaintiff did not specifically identify the
    medication that causes these problems, sedation, weakness, and
27  memory impairment are potential side effects of Lorazepam, and
    drowsiness and weakness are common side effects of Seroquel.  <u>The</u>
28  <u>PDR Family Guide to Prescription Drugs</u> at 60, 375, 610.

1    observed problems were within normal limits and at most mild

2    in severity[,] even though fully aware of the [plaintiff's]

3    use of narcotic medication.  I can only conclude then that

4    [plaintiff] has no significant medication side-effects since

5    she has [been] maintained on such medication for a prolonged

6    period of time without any significant complaint being noted

7    in the treating source records.  Indeed, the [plaintiff]

8    drove herself to the two most recent consultative

9    examinations with no indications of any physical or mental

10   problems, which is quite consistent with the impression she

11   is and has been able to function on a day to day basis at

12   least within the limits found herein above.

13

14   A.R. 333-34.  Since plaintiff has not identified any portion of the

15   medical record showing she complained to any physician about the side

16   effects she now identifies, the ALJ's findings are supported by

17   substantial evidence in the record; thus, there is no basis to set

18   aside the ALJ's RFC assessment based on plaintiff's complaints of side

19   effects.  See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006)

20   (ALJ did not err in assessing claimant's RFC when claimant did not

21   report alleged side effect of fatigue to any doctor); Miller v.

22   Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (ALJ properly rejected

23   claimant's complaint that his use of prescription narcotics disabled

24   him when claimant "produced no clinical evidence showing that

25   narcotics use impaired his ability to work.").  Moreover, since

26   plaintiff does not challenge the ALJ's adverse credibility

27   determination, this finding also provides a sufficient basis to reject

28   plaintiff's testimony regarding side effects.  Thomas v. Barnhart,

278 F.3d 947, 960 (9th Cir. 2002).

**C.   Duty to Develop the Record:**

The plaintiff claims, despite the voluminous medical record, that the ALJ failed to fully and fairly develop the administrative record because he did not have plaintiff examined by a rheumatologist.[12]  Jt. Stip. at 18:8-19:23, 21:24-26; see Smolen, 80 F.3d at 1288 ("'In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" (citation omitted)); Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (same).  However, "the Commissioner 'has broad latitude in ordering a consultative examination[,]'" Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (quoting Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 778 (9th Cir. 1990)), which is a discretionary decision.  Sims v. Apfel, 224 F.3d 380, 381-82 (5th Cir. 2000) (per curiam).  Rather, consultative examinations are required only "when such an evaluation is necessary for [the ALJ] to make an informed decision."  Haley v. Massanari, 258 F.3d 742, 749 (8th Cir.

---

[12]  Plaintiff's claim appears to be based on a comment by this Court in Collins I, wherein this Court stated:

> In the Court's opinion, such referral [to a
> rheumatologist] is necessary, if not vital, to assure
> proper medical **treatment** for plaintiff, who currently
> is taking a cornucopia of prescription medications,
> some of which are quite powerful controlled substances.

Collins I at 10 n.25 (citation omitted; emphasis added).  This statement was in recognition of plaintiff's apparent dependence on various medications, A.R. 45, and her lack of overall care or treatment by a qualified rheumatologist.  It did **not** require the ALJ on remand to obtain a consultative examination by a rheumatologist.

1  2001); <u>Holladay v. Bowen</u>, 848 F.2d 1206, 1209 (11th Cir. 1988).

2

3      Here, the ALJ referred plaintiff for multiple consultative

4  examinations to assist him in properly assessing plaintiff's physical

5  and mental limitations, but did not seek a consultative examination by

6  a rheumatologist because "[t]he record before the ALJ was neither

7  ambiguous nor inadequate to allow for proper evaluation of the

8  evidence" on fibromyalgia.  <u>Mayes</u>, 276 F.3d at 460.  Thus, the ALJ did

9  not fail to properly develop the medical record.

10

11      **D.   Obesity:**

12      In <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th Cir. 2003), the

13  Ninth Circuit found that an ALJ committed legal error in failing to

14  consider a claimant's obesity, even though the claimant did not

15  specifically raise the issue.  <u>Id.</u> at 1182.  However, *Celaya* is

16  inapposite here since the ALJ determined plaintiff's obesity is a

17  severe impairment, A.R. 329, and he considered her obesity in

18  determining she is not disabled.  Indeed, the record contains

19  absolutely no evidence showing plaintiff's obesity[13] exacerbates her

20  other impairments, <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir.

21  2005); <u>see</u> <u>also</u> SSR 02-1p, 2000 WL 628049, *4 ("There is no specific

22  level of weight or BMI that equates with a 'severe' or a not severe'

23

24      [13]   Plaintiff's driver's license states she is 5' 4" tall,
    A.R. 941, 953, and plaintiff testified at the 2007 administrative
25  hearing that she had weighed as much as 190 pounds.  A.R. 958,
    886-87.  At this weight, plaintiff's BMI is 32.6, indicating
26  level 1 obesity, as the ALJ found.  SSR 02-01p at *3.  On the
    other hand, Dr. Lin, who examined plaintiff in June 2007, noted
27  she was 5' 7" tall and weighed 182 pounds, which yields a BMI of
    28.5, which is not considered to be obese.  A.R. 929.
28

impairment.  Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes."), or has any effect on her ability to perform basic work activities. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  Thus, "the ALJ adequately considered [plaintiff's] obesity in his RFC determination."  Burch, 400 F.3d at 684.

V

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007); Widmark, 454 F.3d at 1069.  There are two ways for the Commissioner to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[14]  Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Widmark, 454 F.3d at 1069.

Regarding the testimony of a vocational expert, any hypothetical question posed to a vocational expert must consider all of the

---

[14]  The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants.  Each rule defines a vocational profile and determines whether sufficient work exists in the national economy.  These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity."  Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

1    claimant's limitations, <u>Thomas</u>, 278 F.3d at 956; <u>Lewis v. Apfel</u>,

2    236 F.3d 503, 517 (9th Cir. 2001), and "[t]he ALJ's depiction of the

3    claimant's disability must be accurate, detailed, and supported by the

4    medical record." <u>Tackett</u>, 180 F.3d at 1101.  Here, the ALJ asked

5    vocational expert Sandra Fioretti the following hypothetical question:

6

7        Assume a hypothetical individual claimant's age, education,

8        prior work experience.  Assume this person is restricted to

9        . . . occasional climbing, balancing, stooping, kneeling,

10       crouching, crawling, no production quotas that require

11       piecework type jobs.  Also, no forceful gripping. . . .

12       [A]ssume . . . a sedentary range of work.  Is there work

13       such a person could perform?

14

15   A.R. 973-74.  The vocational expert responded that such an individual

16   could work as a charge account clerk, Dictionary of Occupational

17   Titles ("DOT")[15] no. 205.367-014, with 1,000 job positions regionally

18   and 25,000 nationally, or an assembler in buttons and notions, DOT no.

19   734.687-018, with 1,200 positions regionally and 16,000 nationally,

20   and that this testimony is consistent with the DOT.  A.R. 974-75.

21   However, plaintiff contends the ALJ's hypothetical question was

22   incomplete since it did not include information about plaintiff's side

23   effects from medications and the effects of plaintiff's obesity.  Jt.

24   Stip. at 25:27:3, 27:15-17.

25   //

26

27       [15]  The DOT is the Commissioner's primary source of reliable
     vocational information.  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1434
28   n.6 (9th Cir. 1995).

1    There is no merit to this claim since the ALJ properly found

2  plaintiff has no side effects from her medications, and plaintiff's

3  obesity does not exacerbate her other impairments or her ability to

4  perform basic work activities.  See Greger, 464 F.3d at 973 (9th Cir.

5  2006) ("The ALJ . . . 'is free to accept or reject restrictions in a

6  hypothetical question that are not supported by substantial

7  evidence.'" (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th

8  Cir. 2001)); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988)

9  ("[E]xclusion of some of a claimant's subjective complaints in

10  questions to a vocational expert is not improper if the [Commissioner]

11  makes specific findings justifying his decision not to believe the

12  claimant's testimony about claimed impairments such as pain.").  Thus,

13  the vocational expert's testimony constitutes substantial evidence to

14  support the ALJ's Step Five determination that plaintiff can perform

15  work in the national economy and is not disabled.  Bayliss, 427 F.3d

16  at 1217; Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir.

17  2008).

18

19                                **ORDER**

20    IT IS ORDERED that: (1) plaintiff's request for relief is denied;

21  and (2) the Commissioner's decision is affirmed, and Judgment shall be

22  entered in favor of defendant.

23

24  DATE:  July 27, 2009            /S/ ROSALYN M. CHAPMAN
                                    ROSALYN M. CHAPMAN
25                                  UNITED STATES MAGISTRATE JUDGE

26  R&R-MDO\07-1661.mdo
    7/27/09

27

28

                                 23